Paul Arons, State Bar #84970
LAW OFFICE OF PAUL ARONS
685 Spring Street, #104
Friday Harbor, WA 98250
Tel:  (360) 378-6496
Fax: (360) 37806498
lopa@rockisland.com

Ronald Wilcox, State Bar #176601
LAW OFFICE OF RONALD WILCOX
2160 The Alameda, 1st Flr., Suite F
San Jose, CA 95126
Tel:  (408) 296-0400
Fax: (408) 296-0486

O. Randolph Bragg, IL. Bar #06221983
HORWITZ, HORWITZ & ASSOCIATES
25 East Washington, Suite 900
Chicago, IL 60602
(312) 372-8822

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| RICHARD L. CARRIZOSA and MARY PEA, on behalf of themselves and others similarly situated, | CIV. NO.  05-2280 RMW |
| | CLASS ACTION |
| Plaintiffs, | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL FURTHER DISCOVERY FROM LEGAL RECOVERY SERVICES OF CENTRAL CALIFORNIA, INC. |
| vs. | |
| PAUL R. STASSINOS, an individual, ALAN MECHAM, an individual, LEGAL RECOVERY SERVICES, INC., a California corporation, LEGAL RECOVERY SERVICES OF CENTRAL CALIFORNIA, INC., a California corporation, CENTRAL VALLEY LEGAL RECOVERY SERVICES, INC., a California corporation, DOES 1 through 20., | Date:  May 17, 2006 Time: 9:30 a.m. Courtroom 4 |
| Defendants. | |

# TABLE OF CONTENTS

Table of Contents ........................................................................................................... i

Table of Authorities ....................................................................................................... ii

I.  INTRODUCTION ................................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................................... 1

A.  The Parties .......................................................................................................... 1

     1. The Plaintiffs ................................................................................................... 1

     2.   Defendants Paul R. Stassinos, Legal Recovery Services, Inc. and
        Alan Mecham ................................................................................................ 1

     3.   Defendants Central Valley Legal Recovery Services, Inc. and
        Legal Recovery Services of Central California, Inc. ................................... 2

     4.  Class Action Allegations ............................................................................... 3

III.  ISSUES RELEVANT TO THIS MOTION .............................................................. 4

   A.  Do Defendants Falsely Represent in the Form Collection Letters
      that the Letters are Sent By an Attorney Who Had Meaningful
      Professional Involvement in the Decision to Send the Letter to the
      Check Writer ................................................................................................ 4

   B.  Is Alan Mecham a Debt Collector under the FDCPA? ......................................... 6

   C.  Is Legal Recovery Services of Central California, Inc.
      Vicariously Liable for Check Collection Violations the Took Place at
      Other LRS Locations? ................................................................................ 7

IV.  CHRONOLOGY OF DISCOVERY ........................................................................ 8

V.  INTERROGATORIES ............................................................................................ 9

VI.   REQUEST FOR PRODUCTION OF DOCUMENTS ............................................. 15

VII.   CONCLUSION ..................................................................................................... 20

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*American Floral Services, Inc. v. Florists' Transworld Delivery Ass'n.*,
4      107 F.R.D. 258 (N.D. Ill 1985)                                                9

5      *Avila v. Rubin*,
       84 F.3d 222 (7th Cir. 1996)                                              3, 4, 5
6

7      *Ballard v. Equifax Check Services, Inc.*,
       186 F.R.D. 589 (E.D. Cal. 1999)                                               10
8

9      *Boyd v. Wexler*,
       275 F.3d 642 (7th Cir. 2001)                                                5, 6

10
       *Burlington Northern & Santa Fe Ry. v. United States*,
11     403 F.3d 1042 (9th Cir. 2005)                                                 16

12     *Chambers v. Kay*, 29 Cal. 4th 142, 151 (2002)                                8

13     *Christensen v. Superior Court*,
       54 Cal. 3d 868 (1991)                                                          7
14

15     *Clomon v. Jackson*,
       988 F.2d 1314 (2d Cir. 1993)                                               4, 5
16

17     *Continental Illinois Nat'l Bank & Trust Co. v. Caton*,
       136 F.R.D. 682 (D.Kansas 1991)                                                12

18     *In re MTI Tech. Corp. Secs. Litig. II*,
19     2002 U.S. Dist. LEXIS 13015 (C.D. Cal. 2002)                                   0

20     *King v. Int'l Data Servs.*,
       2002 U.S. Dist. LEXIS 26426, (D.HI 2002)**,**
21     *aff'd.*  2004 U.S. App. LEXIS 11377 (9th Cir. 2004)                          14

22     *Laxalt v. McClatchy*,
23     116 F.R.D. 438 (D.Nev. 1987)                                                   9

24     *Mann v. Acclaim Fin. Servs.*,
       348 F. Supp. 2d 923 (S.D. Ohio 2004)                                          15
25

26     *Mantolete v. Bolger*,
       767 F.2d 1416 (9th Cir. 1985)                                                 10
27

28     *Martin v. Easton Publ. Co.*,
       85 F.R.D. 312  (E.D. Pa. 1980)                                                12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Masuda v. Thomas Richards & Co.*,
759 F. Supp. 1456 (C.D. Cal. 1991)                                          4

*Palmer v. Stassinos*,
348 F. Supp. 2d 1070 (N.D.Cal. 2004)                                        3

*Pollice v. National Tax Funding, L.P.*,
225 F.3d 379 (3rd Cir 2000)                                                 7

*Schwartz v. Upper Deck Co.*,
183 F.R.D. 672 (S.D. Cal. 1999)                                            11

**Statutes and Rules**

15 U.S. C. § 1692e(3)                                                       4

15 U.S.C. § 1692f(1)                                                       13

15 U.S.C. § 1692k                                                          14

Fed.R.Civ.P. 23(a)(1)                                                  10, 13

Fed.R.Civ.P. 26(b)(1)                                                       9

## I.  INTRODUCTION

Plaintiffs Richard Carrizosa and Mary Pea are filing this motion to compel further discovery because defendant Legal Recovery Services of Central California, Inc. [LRS Central California] is refusing to provide discovery relevant to class certification and liability issues.

## II.  FACTUAL BACKGROUND
### A.  The Parties
#### 1. The Plaintiffs

Plaintiffs Richard Carrizosa and Mary Pea have a joint checking account on which Mr. Carrizosa wrote several checks to PW Supermarkets that were dishonored on presentment.  Consequently, Mr. Carrizosa and Ms. Pea received a series of computer-generated form collection demands, most being ostensibly from defendant Paul Stassinos.

#### 2.  Defendants Paul R. Stassinos, Legal Recovery Services, Inc. and Alan Mecham

Mr. Stassinos is a California attorney who participates in collecting dishonored checks, adding substantial fees to the check amount.  He also files collection lawsuits against a small percentage of check writers who do not pay.  Based on discovery in this action and in the related case, *Palmer v. Stassinos*, Civ. No. 04-3026 RMW, in about 1991 Mr. Stassinos began working in the check collection business with a debt collection company known as Legal Recovery Services, Inc., [LRS].  LRS solicits and signs up the merchants who refer dishonored checks, and performs the actual work of receiving the checks, inputting data, sending form collection letters, making phone calls, and receiving, logging and depositing check writer payments in Mr. Stassinos' trust account.  The degree of Mr. Stassinos' involvement in this state of the collection process is a critical disputed issue in this lawsuit.  After LRS has made written demands and phone calls, it refers some unpaid checks to Mr. Stassinos, who decides whether to file a collection lawsuit.  Almost all of these collection lawsuits that the check writer does not

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL FURTHER DISCOVERY: Page 1

immediately settle result in default judgments.[1]  Alan Mecham is an officer and director of LRS.

### 3.  Defendants Central Valley Legal Recovery Services, Inc. and Legal Recovery Services of Central California, Inc.

Central Valley Legal Recovery Services, Inc., [Central Valley LRS] and Legal Recovery Services of Central California, Inc., [LRS Central California] are remote offices of LRS.[2]  Both of these remote offices are, at least nominally, independently owned.  Under the agreement between LRS and Brenda Meadows, the owner of the non-corporate predecessor of LRS Central California, Ms. Meadow was allowed to operate as LRS Central California in eight California counties,  The agreement mandated how she would keep her books, that she would be bound by an attorney retainer agreement, that she would deposit the money she collected into an attorney trust account, that she would submit weekly accounting records both to LRS and the LRS attorney [Mr. Stassinos], that she would conduct the "check recovery business" in accordance with operations standards set by LRS and by the attorney retainer agreement.  Pursuant to the agreement, money collected on checks from certain merchants was the property of LRS Central California, while money collected on the checks of other merchants was the property of LRS.  LRS Central California paid LRS based on a percentage of its gross income.  It was required to operate in accordance with operational standards set by LRS and the attorney retainer agreement.  LRS had the right to inspect all books and records without notice.

Under the attached "attorney retainer agreement" between Mr. Stassinos and Brenda Meadows, LRS of Central California was required to deposit all money in an attorney trust account, and Mr. Stassinos would then divide the money and disburse it to

---

1.  Plaintiffs have not been able to find any instance where continued to pursue a check collection lawsuit where a court appearance is required.  *See* Declaration of Paul Arons in Support of Motion to Compel Further Discovery, hereinafter, "'Decl. of P. Arons."

2.  Deposition of Adam Perry in *Palmer v. Stassinos*, p. 9:8-18.  Exhibit 2 to Decl. of P. Arons.

the merchant who referred the check, to LRS, to Mr. Stassinos.  Any money remaining

would be paid to LRS Central California.  Mr. Stassinos was entitled to a percentage of all

collection fees recovered by LRS Central California.  The percentage payable to Mr.

Stassinos changed based on the stage of the collection process at which the money was

recovered.  Notably, pursuant to this "attorney retainer agreement" the attorney is not

required to perform any work.[3]

### 4. Class Action Allegations

In this putative class action lawsuit plaintiffs allege that that defendant are

violating the Fair Debt Collections Practices Act, 15 U.S.C. §§ 1692, et seq., [FDCPA],

and the California Unfair Competition Law, Cal. Bus & Prof. Code §§ 17200, et seq.

[UCL], primarily because they are adding unlawful fees to the check the seek to collect,

and they misrepresent that the form collection demands are from an attorney who has

had meaningful professional involvement in the decision to send each letter.[4]  *See*

*Complaint*, ¶¶ 19-23.  The putative class is defined in the Complaint as:

> All persons who wrote checks in California either from whom defendant
> demanded a payment of any unlawful collection charges or to whom
> defendant send a collection demand that was falsely represented as being
> a bona fide communication from an attorney.  *Complaint*, ¶ 24.

The Court already has ruled that Mr. Stassinos may not seek interest on

dishonored checks.  *Palmer v. Stassinos*, 348 F. Supp. 2d 1070, 1083 (N.D.Cal. 2004).

There are no other rulings on the merits.  Plaintiffs will seek class certification once they

have completed discovery sufficient to establish that this action meets the class

certification requirements of Fed.R.Civ.P. 23(a) and (b).

---

3. A copy of the October 8, 1996 "Articles of Agreement" between LRS and Brenda Meadows, with the attached retainer agreement, is filed herewith as Exhibit 1 to Decl. of P. Arons.

4.  It is commonly recognized that a demand letter from an attorney carries more coercive impact than a letter from a non-attorney debt collector.  As succinctly stated by the Seventh Circuit: "An unsophisticated consumer, getting a letter from an "attorney," knows the price of poker has just gone up. . . . A debt collection letter on an attorney's letterhead conveys authority.  Consumers are inclined to more quickly react to an attorney's threat than to one coming from a debt collection agency".  *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996).

### III.  ISSUES RELEVANT TO THIS MOTION

**A.  Do Defendants Falsely Represent in the Form Collection Letters that the Letters are Sent By an Attorney Who Had Meaningful Professional Involvement in the Decision to Send the Letter to the Check Writer**

The FDCPA creates obstacles to debt collectors who want to use the name and authority of an attorney to increase the coercive impact of a collection demand.  For instance, 15 U.S.C. § 1692e(3) provides that a debt collector may not make:

> The false representation or implication that any individual is an attorney or that any communication is from an attorney.

Under the FDCPA, before an attorney signs a dunning letter, the attorney must review the debtor's file and have some knowledge about the alleged debt.  *Masuda v. Thomas Richards & Co.*, 759 F. Supp. 1456, 1461 (C.D. Cal. 1991).  A debt collector violated the FDCPA when it sends a letter purporting to be from an attorney, unless the attorney has had meaningful professional involvement in the decision to send a particular letter to a particular debtor.  *Avila v. Rubin, supra*, 84 F.3d at 229.  As stated by the Avila court:

> The attorney letter implies that the attorney has reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action. And the letter also implies that the attorney has some personal involvement in the decision to send the letter. Thus, if a debt collector (attorney or otherwise) wants to take advantage of the special connotation of the word "attorney" in the minds of delinquent consumer debtors to better effect collection of the debt, the debt collector should at least ensure that an attorney has become professionally involved in the debtor's file. Any other result would sanction the wholesale licensing of an attorney's name for commercial purposes, in derogation of professional standards.  *Avila v. Rubin, ibid*.

The seminal case illustrating this principle is *Clomon v. Jackson*, 988 F.2d 1314 (2nd Cir. 1993).  In that case, an attorney was employed by a debt collector who used  computerized mass-mailing system to send form letters to approximately one million debtors a year.  Many of the letters were on the letterhead of an attorney, Philip Jackson.  Mr. Jackson had personally approved the form letters, but he did not have any

personal involvement in Mr. Clomon's particular account.  The Second Circuit held that

the letters violated 15 U.S.C. § 1692e(3) because they were not, in any meaningful

sense, communications from an attorney.  *Id.*, at 1320.  In reaching its conclusion, the

court recognized that although the mass mailing of collection letters might financially

benefit the debt collector, a mass-mailed collection letter that gave the impression of

attorney involvement would frequently be deceptive.   The court stated that

> [T]there will be few, if any, cases in which a mass-produced collection letter
> bearing the facsimile of an attorney's signature will comply with the
> restrictions imposed by § 1692e.  *Id.*, at 1321.

In *Avila v. Rubin, supra*, the lawyer, Albert Rubin, owned a debt collection

company that mailed 270,000 letters per year. Mr. Rubin personally approved the form

letters used, and he trained the collectors who actually sent the letters out.  *Id.*, at 225.

Like the lawyer in *Clomon*, however, Mr. Rubin did not personally review the files and

decide which letters should be sent to which debtors.  The Seventh Circuit, followed

*Clomon*, explaining that:

> A debt collection letter on an attorney's letterhead conveys authority.
> Consumers are inclined to more quickly react to an attorney's threat than to
> one coming from a debt collection agency. . . . [T]he letter also implies that
> the attorney has some personal involvement in the decision to send the
> letter. Thus, if a debt collector (attorney or otherwise) wants to take
> advantage of the special connotation of the word "attorney" in the minds of
> delinquent consumer debtors to better effect collection of the debt, the debt
> collector should at least ensure that an attorney has become professionally
> involved in the debtor's file. Any other result would sanction the wholesale
> licensing of an attorney's name for commercial purposes, in derogation of
> professional standards.  *Id.*, at 229.

In *Boyd v. Wexler*, 275 F.3d 642 (7th Cir. 2001), Judge Posner pointed out

some of the objective evidence that may be considered in determining whether a lawyer

has had sufficient professional involvement in the collection process to justify sending a

collection letter on attorney letterhead.  For instance, if the sheer number of letters sent

on attorney letterhead mail may be probative evidence showing a violation.[5]  Other relevant evidence would be showing how often the lawyer's initial review of the file resulted in the lawyer refusing to approve sending a collection letter.  The fact that the lawyer refused to approve a letter would tend to show actual professional involvement, while possibly also taking away from the time that he had to review other accounts.  *Id.*, 646-647.

In the present case, defendant Stassinos receives up to 1,500 checks per week from all three LRS entities.[6]  Mr. Stassinos testified in his deposition in *Palmer v. Stassinos* that he spends about five hours each week reviewing new checks. [7], prior to the initiation of the collection process, he personally reviews each of the thousands of checks that are sent in each month.  Defendants' claims that that Mr. Stassinos supervises the collection activities at each of the three LRS entities.  Plaintiffs dispute this, based on, *inter alia*, the sheer volume of checks that Mr. Stassinos claims he reviews, and evidence casting doubt on his claim that his initial check review is a meaningful or consistent part of the collection process.  Whether defendants are violating 15 U.S.C. § 1692e(3) will be determined based on evidence concerning Mr. Stassinos' personal involvement in check collection process.

### B.  Is Alan Mecham a Debt Collector under the FDCPA?

Defendant Alan Mecham is an officer and director of LRS.  He is not liable under the FDCPA unless he is a "debt collector" within the meaning of the Act.  A debt

---

5.  In *Boyd*, the debt collector, who had three attorneys, sent 439,606 pieces of mail per year.  Judge Posner concluded that mail volume alone rendered the defendant's testimony that he had reviewed the plaintiffs' letters "highly implausible," at best.  *Id.* , at 645-646.

6.  Deposition of Paul Stassinos in *Palmer v. Stassinos*, pp. 60:22-61:4. In *Palmer v. Stassinos*, defendant has refused to provide discovery showing how many letters a week are sent by the three LRS entities, or how often Mr. Stassinos does anything in his claimed initial review of incoming checks, other than let the collection process proceed.  Mr. Stassinos' testimony as to whether he reviews checks prior to initiation of collection procedures was inconsistent.  Excerpts from the Paul Stassinos deposition are attached as Exhibit 3 to Decl. of P. Arons.

7.  Deposition of Paul Stassinos in *Palmer v. Stassinos*, pp. 68:17-69:14, 76:3-24 Exhibit 3 to Decl. of P. Arons.

collector is a person who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  Mr. Mecham denies that he is a debt collector.  Mr. Mecham's personal participation in his debt collection company, and/or his status as a participant in joint venture, will determine whether he is liable under the FDCPA.  *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 405 (3rd Cir 2000).  Evidence concerning his participation in the collection process at either LRS itself, or at any of the other LRS entities, will be probative on the issue of Mr. Mecham's liability.

### C. Is Legal Recovery Services of Central California, Inc. Vicariously Liable for Check Collection Violations the Took Place at Other LRS Locations?

Finally, plaintiffs allege that all defendants are jointly liable because defendants jointly operate a high volume collection business.  *Complaint*, ¶1.  In their Complaint, plaintiffs allege that:

> [E]ach defendant herein is acting in concert with, and the agent and/or employee of, each other defendant. . . . *in a joint enterprise*. . . .
>
> *The LRS corporations are set up to staff and run the check collection business that operates nominally as the "Law Office of Paul Stassinos."*

Emphasis added, Complaint, ¶¶ 11-13.

Plaintiffs also allege specific facts concerning how the businesses operate:

> "With minimal or no supervision by defendant Stassinos, the LRS corporations perform most functions of the business, included, but not limited to soliciting merchants for Defendants check collection operation, signing agreements between merchants and the Defendants check collection operation, receiving checks referred by these merchants for collection, entering data from checks referred by merchants, printing and mailing computer-generated form letters on "Law Office" letterhead, with a typed signature line for "Paul R. Stassinos, Attorney at Law," communicating with check writers by phone in furtherance of the attempt to collect for the Defendants check collection operation, and receiving and distributing money paid by check writers.  Complaint, ¶ 13

A joint venture is sort of a mutual agency, akin to a limited partnership. *Christensen v. Superior Court,* 54 Cal. 3d 868, 893 (1991).  A joint venture exists where

there is "an agreement between the parties under which they have a community of interest, that is, a joint interest, in a common business undertaking, an understanding as to the sharing of profits and losses, and a right of joint control."  *Chambers v. Kay*, 29 Cal. 4th 142, 151 (2002).  Whether the defendants are engaged in a joint venture is primarily an issue of fact that will be determined by the substance of their agreements.  There are few written agreements between the parties.[8]  The actual conduct of the parties in the operation of the businesses will be probative of the substance of their agreements.

## IV.  CHRONOLOGY OF DISCOVERY

Plaintiff Richard Carrizosa served a request for production of documents, and a set of ten interrogatories, on October 10, 2005.  LRS Central California served its initial response to plaintiff's document production request on November 14, 2005, and its initial interrogatory response on November 23, 2005.[9]  On November 29, 2005, plaintiffs wrote defendant, requesting an opportunity to meet and confer concerning the discovery.  The parties met and conferred on December 9, 2005, and defendant served supplemental discovery responses on January 4, 2006.[10]  Plaintiff wrote defendants on January 17, 2006, requesting that the parties meet and confer concerning these supplemental discovery responses.  The parties met and conferred on January 26, 2006, and LRS Central California agreed to provide a few additional interrogatory responses.  These were served on February 10, 2006.  The present motion does not concern the February 10, 2006 responses.

---

8. Despite the fact that  both Mr. Stassinos and LRS, Inc. claim that they have agreements with LRS of Central California, Inc., and Central Valley LRS, Inc., defendants have not identified or produced any such written agreements.  Defendants have produced expurgated copies of agreements that the individuals who owned the companies prior to incorporation had with Mr. Stassinos and LRS, Inc.

9.  A copy of defendant's November 14, 2005 Response to Plaintiff Richard Carrizosa's Request for Production of Documents is attached as Appendix A in Support of Motion to Compel Further Discovery, hereinafter, "Appendix."  A copy of defendant's November 23, 2005 Response to Plaintiff Richard Carrizosa's Interrogatories is attached as Appendix B.

10.  A copy of defendant's January 4, 2006 Supplemental  Response to Plaintiff Richard Carrizosa's Request for Production of Documents is attached as Appendix C.  A copy of defendant's January 4, 2006 Supplemental Response to Plaintiff Richard Carrizosa's Interrogatories is attached as to Appendix D.

## V. INTERROGATORIES

**Interrogatory No. 2:** Identify by name, last known address and phone number, job titles and job duties, all of LRS' current and past employees, for the period June 7, 2001 to the present.

**11/23/2005 Response to Interrogatory No. 2:** Defendant objects on the grounds that this interrogatory calls for information which is neither relevant nor calculated to lead to the discovery of admissible evidence. Defendant also objects on the grounds that the request is overbroad and unduly burdensome. Defendant also objects on the grounds that the information called for by the interrogatory is protected by the privacy interests of third parties.

**Plaintiff's Discussion Re: Interrogatory No. 2:** In this interrogatory plaintiffs seek to identify and locate defendant's current and former employees, who are potential witnesses to defendants' collection practices. The identity and location of potential fact witnesses is discoverable. Fed.R.Civ.P. 26(b)(1), *Laxalt v. McClatchy*, 116 F.R.D. 438, 443 (D.Nev. 1987), *In re MTI Tech. Corp. Secs. Litig. II*, 2002 U.S. Dist. LEXIS 13015, *8 (C.D. Cal. 2002), *American Floral Services, Inc. v. Florists' Transworld Delivery Ass'n.*, 107 F.R.D. 258, 260 (N.D. Ill 1985). Issues in this lawsuit include, but are not limited to, (1) the mechanics of the daily collection process as it affects the meaningful professional involvement of Paul Stassinos; (2) whether Alan Mecham is a "debt collector" within the meaning of the FDCPA; and, (3) whether the working relationship between LRS and the LRS co-defendants in Modesto and Bakersfield make them part of a joint enterprise Stassinos/LRS collection operation, for which all participants may be vicariously liable. Employees who witness daily collection activities are likely to have evidence as to Mr. Stassinos' involvement in the collection process, who controls that daily operation of the business, and the sharing of information and resources between the defendants. LRS Central California has about eight employees.[11] In this small workplace, a number of different employees may have discoverable

---

11. Deposition of Paul Stassinos in *Palmer v. Stassinos*, p. 199:21-25, 76:3-24 Exhibit 3 to Decl. of P. Arons.

evidence.  Plaintiffs seek information necessary to allow them to contact and interview former or current employees.  In sum, identifying current and former employees by name and providing contact information is reasonably calculated to lead to the discovery of admissible evidence.

**Interrogatory No. 6:**  Identify, by code name or number, each form letter that LRS of Central California uses in its communications with check writers, and for each letter identified, *specify, on a* monthly basis how many form letters were sent out.

**11/23/2005 Response to Interrogatory No. 6:**  Defendant objects on the grounds that this interrogatory calls for information which is neither relevant nor calculated to lead to the discovery of admissible evidence in that this action involves two named plaintiffs with whom responding party has not been involved in collection activity. Defendant also objects on the grounds that the request is overly broad and unduly burdensome. Defendant also objects on the grounds that the information called for by the interrogatory is protected by the privacy interests of this defendant and of third parties.

**Plaintiffs' Discussion re: Interrogatory No. 6:**  Defendant has produced some form letters in response to a document production request.  Defendant, however, has objected to providing any information that shows how many form letters it sent, on a monthly or any other basis.  Defendant's objections are: (1) that the information is not calculated to lead to the discovery of admissible evidence; (2) that the request is overly broad and oppressive and burdensome; and, (3) that defendant and third parties have a privacy interest in this information.  Defendant's objections are not well taken

The information sought is reasonably calculated to lead to the discovery of admissible evidence concerning both class certification and both individual and class FDCPA liability.  As to class certification, plaintiffs will be filing a motion for class certification in which plaintiffs must make a *prima facie* showing of each of the Fed.R.Civ.P. 23(a) prerequisites.  *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985), *Ballard v. Equifax Check Servs.*, 186 F.R.D. 589, 594 (E.D. Cal. 1999).  Rule 23(a)(1) requires that plaintiffs show that the putative class is of such a numerous size as

to make joinder impracticable.  Mere speculation as to satisfaction of this numerosity requirement does not satisfy Rule 23(a)(1).  *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 681 (S.D. Cal. 1999).  Plaintiffs' class claims against defendants are based on sending form letters to collect checks.  Plaintiffs allege that each of the form letters sent violates at least one provision of the FDCPA.  However, not every letter violates every provision at issue in this lawsuit.  Thus, plaintiffs may have to meet the numerosity requirement as to each claim.  For instance, one of the FDCPA violations alleged is that defendants misrepresented that its form letters, on "Law Office of Paul R. Stassinos" letterhead, were communications from an attorney.  Most, but not all, of the form letters are on this letterhead.  Therefore, simply knowing how many letters were sent overall would suffice to show numerosity as to that claim.  Defendant refuses to provide this information.  Another alleged FDCPA is that defendants demanded unlawful interest.  Defendants only demanded interest in a few specific letters in the letter series.  Plaintiffs may have to provide evidence as to the number of putative class members who were sent letters demanding interest.  Another alleged violation arises from defendant sending letters nominally in the name of the merchant, rather than the debt collector.  There may be relatively few form letters like this, and the number of people to whom such a letter was sent may be relevant to determining numerosity on this issue.  In sum, plaintiffs are entitled to discover the information that the need to meet Rule 23(a) prerequisites as to all claims.

The overall number of letters sent is also discoverable in connection with the substantive individual and class claim that the letters were falsely represented as being communications from an attorney, because Mr. Stassinos did not have meaningful professional involvement in the decision to send a particular letter to a particular check writer.  As discussed above, the sheer volume of the work in which Mr. Stassinos claims to be professionally involved may be circumstantial evidence supporting plaintiffs' claim. For instance, if it turns out that defendants are mailing 10,000 letters each month on "Law

Office" letterhead, Mr. Stassinos will be hard-pressed to argue that he individually decided what action to take in connection with each of the 10,000 letters.  Further, if defendants send out 10,000 letters each month, even in months when Mr. Stassinos in on vacation, defendants will have a difficult time arguing that Mr. Stassinos' presence has any significance in the routine collection process of inputting data and mailing computer-generated form collection demands.  In short, the outcome of this particular claim may turn in large part on the number of letters sent on Mr. Stassinos' letterhead.  The information sought in this interrogatory is directly relevant to this claim.

Defendants also object that it is burdensome and oppressive to have to provide this information.  Bare assertions that the discovery requested is overly broad, burdensome, oppressive or irrelevant are ordinarily insufficient, standing alone, to bar production.   A party may not object on these grounds without detailing the nature an extent of the burden involved.  *Continental Illinois Nat'l Bank & Trust Co. v. Caton*, 136 F.R.D. 682, 685 (D.Kansas 1991), *Martin v. Easton Publ. Co.*, 85 F.R.D. 312, 316 (E.D. Pa. 1980).  In the present case, defendant has not explained why it is unduly difficult to provide any of the letter information that plaintiffs seek.  The computer system in use at LRS can generate reports showing how many of a particular letter was sent during a designated time period.[12]  Since the computer system at LRS of Central California runs collection software supplied and maintained by LRS there is every reason to believe that LRS of Central California can generate the same data reports available to LRS.

Finally, defendant asserts a privacy objection.  There is no obvious privacy interest at issue in this interrogatory, since the interrogatory does not seek the identity of any individual.

_____

12.  In the related case of *Palmer v. Stassinos*, Alan Mecham testified as follows:
Q  Can it [the LRS computer system] generate a count of how many of a particular kind of letter were sent during a particular time period?
A  Yes, it can.
     *See* Deposition of Alan Mecham in *Palmer v. Stassinos*, pp. 105:20-108:4.  Excerpts from that deposition are attached as Exhibit 4 to Decl. of Paul Arons.

**Interrogatory No. 14:**  For each year since 2001, set forth the total interest charges paid to any defendant by check writers and the total number of such class members who have paid these charges. Exclude interest that was awarded in a lawsuit judgment.

**11/23/2005 Response to Interrogatory No. 14:** Defendant objects on the grounds that this interrogatory calls for information which is neither relevant nor calculated to lead to the discovery of admissible evidence as this action involves two named plaintiffs with whom this defendant had no collection activity. Defendant also objects on the grounds that the request is overly broad and unduly burdensome. Defendant also objects on the grounds that the information called for by the interrogatory is protected by the privacy interests of this defendant and third parties. Defendant also objects on the grounds that the request seeks information which constitutes protected trade secrets and invades confidential and proprietary business information.

**1/4/2006 Supplemental Response to Interrogatory No. 14:**  Defendant objects on the grounds that this interrogatory calls for information which is neither relevant nor calculated to lead to the discovery of admissible evidence as this action involves two named plaintiffs with whom this defendant had no collection activity. Defendant also objects on the grounds that the request is overly broad and unduly burdensome. Defendant also objects on the grounds that the information called for by the interrogatory is protected by the privacy interests of this defendant and third parties.

Notwithstanding and without waiving the foregoing objections, responding party responds that neither name plaintiff Carrizosa nor Pea paid interest charges to responding party.

**Plaintiff's Discussion re: Interrogatory No. 14:**  In this interrogatory plaintiffs seek information concerning the number of class members who paid unlawful interest, and the total amount of interest charges paid.  The total amount of damages at issue arising from unlawful interest charges, and the number of class members who paid unlawful charges are most directly related to class certification issues of numerosity and superiority.  One of the claims in this lawsuit is that defendants have violated 15 U.S.C. § 1692f(1) by demanding and collecting check charges that are not permitted by law.  To certify a class, plaintiffs must show that the class is "so numerous that joinder of all members is impracticable."  Fed.R.Civ.P. 23(a)(1).  Whether this defendant demanded or collected interest from one person, a hundred people or one hundred thousand people

bears on whether the class meets the numerosity requirement.  Further, defendants may be expected to oppose class certification on the basis that it is not superior to the alternatives, because the class will not benefit monetarily.[13]  Therefore, the amount of actual damages that may be awarded to class members may be relevant if defendants in this lawsuit make that argument.

Further, whether this lawsuit proceeds as an individual or as a class action, the number of class members who paid unlawful interest, and the total amount of interest charges paid is discoverable in connection with statutory damages.  When a debt collector violates the FDCPA, statutory damages are one of the available remedies.  In either an individual or a class action, statutory damages are awarded, based, in part, on the frequency and persistence of the debt collector's misconduct.[14]  Factors that a court may consider include the number of people affected by the violation.  *King v. Int'l Data Servs.*, 2002 U.S. Dist. LEXIS 26426, *7, *9 (D.HI 2002)**,** *aff'd.*, 2004 U.S. App. LEXIS 11377 (9th Cir. 2004)  [in an individual action, the fact that the violation was committed

---

13.  Defendant Stassinos made this argument in opposing class certification in *Palmer v. Stassinos. See,* Defendant's Supplemental Opposition to Motion for Class Certification, filed 2/09/2006 in, *Palmer v. Stassinos*, Civ. No. 04-3026, pp. 6:21-9:6.  A copy of this brief is attached as Exhibit 5 to the Decl. of Paul Arons.

14.    15 U.S.C. § 1692k provides, in pertinent part:

(a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of--

(2)(A)   in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

(B)     in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

*           *           *

**Factors considered by court**

(b) In determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors--

*           *           *

(2)    in any class action under subsection (a)(2)(B) of this section, *the frequency and persistence of noncompliance by the debt collector*, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional.  15 U.S.C. § 1692k, *emphasis added*.

against thousands of other debtors is relevant in determining amount of statutory damages]; *Mann v. Acclaim Fin. Servs.,* 348 F. Supp. 2d 923, 926 (S.D. Ohio 2004) [in a class action, the fact that debt collector sent violative notices to at least 1,000 debtors is relevant is determining the frequency and persistence of noncompliance in setting the amount of statutory damages].  Defendant should be ordered to respond to this interrogatory.

## VI.  REQUEST FOR PRODUCTION OF DOCUMENTS

**Request for Production No. 4:**  All agreements between any of the defendants, in effect at any time during the relevant time period related to the business of collecting dishonored checks.

**11/14/2005 Response to Request for Production No. 4:**

1.  Defendant Legal Recovery Services of Central California, Inc., objects on the grounds that the information requested is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence. The instant action involves two plaintiffs who have not had contact with this Defendant;

2.  Objection, the request is overly broad and remote;

3.  Objection, the request is oppressive, harassing and burdensome;

4.  Objection, the request seeks information which is protected by a right to financial privacy;

5.  Objection, the request seeks information which is subject to trade secret protection;

6.  Objection, the request seeks information including defendant's counsel's legal analysis and theories and therefore invades the attorney's work-product privilege;

7.  Objection, the request seeks information which is protected from disclosure by the attorney-client privilege.

Defendant agrees to produce no documents in response to this request.

**1/4/2006 Supplemental Response to Request for Production No. 4:**

1. Defendant Legal Recovery Services of Central California, Inc., objects on the grounds that the information requested is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence. The instant action involves two plaintiffs who have not had contact with this Defendant;

2. Objection, the request is overly broad and remote;

3. Objection, the request is oppressive, harassing and burdensome;

4. Objection, the request seeks information which is protected by a right to financial privacy;

5. Objection, the request seeks information including defendant's counsel's legal analysis and theories and therefore invades the attorney's work-product privilege;

6. Objection, the request seeks information which is protected from disclosure by the attorney-client privilege.

Notwithstanding and without waving the foregoing objections, and subject thereto, Defendant responds that it produces herewith copies of all responsive documents in redacted form.

**Discussion re: Request for Production No. 4:** In addition to the issues raised by the substance of the request and defendant's response, defendant's document production responses raise the issue of the efficacy of boilerplate objections. In its initial response to these document production requests, defendants asserted the same litany of seven objections to every request. Boilerplate objections are resoundingly condemned and the Ninth Circuit has held that "boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege." *Burlington Northern & Santa Fe Ry. v. United States Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005). Therefore, defendant's objections are ineffective for any purpose. This motion should be analyzed as if defendant has made no objections at all. Nonetheless, plaintiffs will explain the justification for each document production request in this motion.

Plaintiffs are seeking the agreements between the defendants because one of the issues in this lawsuit is whether the Stassinos/LRS check collection business is a

joint enterprise for which all defendants are vicariously liable, or if there is another relationship, such as principle agent, or alter ego, supporting vicarious liability.  It is undisputed that the parties work together in the check collection business.  Mr. Stassinos claims to be extensively involved in the collection activities of all the LRS corporations. LRS had agreements with the predecessors to the satellite LRS corporations in Modesto and Bakersfield, showing that it had the right to control some of the activities of the corporations, that it received regular payments from these corporations, and that it provided services on a continuous basis.  Defendant's responded to this request by producing a copy of business agreements between LRS and Brenda Meadows, the non-corporate predecessor LRS of Central California.  However, defendant redacted the financial terms that show how LRS of Central California, LRS, Inc. and Mr. Stassinos share income. Since the division of income and expenses is relevant to a determination of vicarious liability, defendant should produced unredacted copies of the agreements.

> **Request for Production No. 8:**  All summaries or periodic reports that quantify LRS of Central California's activity in collecting checks, such as summaries of the number of checks submitted to LRS of Central California for collection, the number and type of letters that LRS of Central California has mailed to check writers, the amount of money that LRS of Central California has recovered in collecting checks, the division of collection proceeds between defendants, and similar information. This includes, but is not limited to, summaries and reports generated for LRS of Central California's internal use, and reports generated for any other purpose.

> **11/14/2005 Response to Request for Production No. 8:**

> 1.  Defendant Legal Recovery Services of Central California, Inc., objects on the grounds that the information requested is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence. The instant action involves two plaintiffs who have not had contact with this Defendant;

> 2.  Objection, the request is overly broad and remote;

> 3. Objection, the request is oppressive, harassing and burdensome;

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL FURTHER DISCOVERY: Page 17**

4.  Objection, the request seeks information which is protected by a right to financial privacy;

5.  Objection, the request seeks information which is subject to trade secret protection;

6.  Objection, the request seeks information including defendant's counsel's legal analysis and theories and therefore invades the attorney's work-product privilege;

7. Objection, the request seeks information which is protected from disclosure by the attorney-client privilege.

Defendant agrees to produce no documents in response to this request.

**1/4/2006 Supplemental Response to Request for Production No. 8:**

1.  Defendant Legal Recovery Services of Central California, Inc., objects on the grounds that the information requested is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence. The instant action involves two plaintiffs who have not had contact with this Defendant;

2.  Objection, the request is overly broad and remote;

3.  Objection, the request is oppressive, harassing and burdensome;

4.  Objection, the request seeks information which is protected by a right to financial privacy;

5.  Objection, the request seeks information which is subject to trade secret protection;

6.  Objection, the request seeks information including defendant's counsel's legal analysis and theories and therefore invades the attorney's work-product privilege;

7.  Objection, the request seeks information which is protected from disclosure by the attorney-client privilege.

Notwithstanding and without waving the foregoing objections, and subject thereto, Defendant references its response to Request Nos. 4 and 6 above.[15]

---

15.  Other than objections, defendant's supplemental response to Request No. 6 was: Notwithstanding and without waving[sic] the foregoing objections, and subject thereto, Defendant responds that it produces herewith copies of form letters that LRS of Central California uses in its communications with check writers.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL FURTHER DISCOVERY: Page 18**

**Discussion re: Request for Production No. 8:**  In the request plaintiff is seeking documents that quantify defendant's collection activities, and that show the division of collection proceeds between defendants.  As previously explained, the volume of collection activity, and the potential actual damages as reflected by money collected, is relevant to class certification issues of numerosity and superiority.  The division of financial proceeds is relevant to the joint liability of defendants.  Defendant's response amounts to nothing more than the statement that it has agreements (with redacted financial terms) and it has form letters.  This is non-responsive and evasive.  It is not clear whether defendant is withholding documents, although it is difficult to see how defendant could purport to assert a series of privilege claims in good faith, if the allegedly privileged documents do not exist.  Defendant has neither identified documents nor produced a privilege log relating to this request.  All privileges and objections should be deemed waived, and defendants ordered to produce whatever responsive documents exist.

**Request for Production No. 27:**  All documents showing payments to or from, any other defendant herein, including, but not limited to invoices, receipts, and checks.

**11/14/2005 Response to Request for Production No. 27:**

1.  Defendant Legal Recovery Services of Central California, Inc., objects on the grounds that the information requested is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence. The instant action involves two plaintiffs who have not had contact with this Defendant;

2.  Objection, the request is overly broad and remote;

3.  Objection, the request is oppressive, harassing and burdensome;

4.  Objection, the request seeks information which is protected by a right to financial privacy;

5.  Objection, the request seeks information which is subject to trade secret protection;

6.  Objection, the request seeks information including defendant's counsel's legal analysis and theories and therefore invades the attorney's work-product privilege;

7.  Objection, the request seeks information which is protected from disclosure by the attorney-client privilege.

Defendant agrees to produce no documents in response to this request.

**Discussion re: Request for Production No. 27:**  As previously explained, the division of proceeds between the parties is directly relevant to the vicarious liability of this defendant.  "Invoices, receipts, and checks" between LRS Central California and other defendants are evidence of the division of proceeds.  Moreover, since there is apparently no written agreement between LRS of Central California, Inc. and either LRS, Inc. or Mr. Stassinos, actual payment records may be the only competent evidence of the sharing of income and expenses between the parties.  Defendant's use of boilerplate objections, and its failure to provide a privilege log related to this document request, amount to a waiver of any objection or privilege.

**VII.  CONCLUSION**

The discovery that plaintiffs seek in this motion is reasonably calculated to lead to the discovery of admissible evidence.  WHEREFORE, plaintiffs respectfully requests that this motion be granted.


DATED: April 12, 2006                                LAW OFFICES OF PAUL ARONS


By  s/ Paul Arons
Paul Arons
Attorney for Plaintiffs
RICHARD CARRIZOSA and MARY PEA